UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11782-RGS

DAVID BEAULIEU, et al.

v.

CITY OF LAWRENCE, et al.

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

December 31, 2009

STEARNS, D.J.

On July 16, 2009, plaintiffs filed this civil rights action against the City of Lawrence and eleven of its police officers.[1]  The case, which was originally filed in Essex Superior Court, was removed to this court on October 23, 2009.  On November 2, 2009, all of the officers with the exception of Kyle Wilcox filed a motion to dismiss plaintiffs' Amended Complaint.

BACKGROUND

The allegations in the Complaint, which are deemed to be true for present purposes, are as follows.  On July 21, 2006, plaintiffs attended a fundraising event at the Social Club in Lawrence, Massachusetts.  The event was held to benefit the Beaulieu family, who had suffered financial troubles after the death of David Beaulieu's youngest son.  In the early

---

[1] Plaintiffs are David Beaulieu, his wife, Lisa Beaulieu, brother Mario Beaulieu, nephew, Mario Beaulieu, Jr., and niece, Tanya Warren.  The individual officers are Kyle R. Wilcox, Terence Pennington, John Bernard, Angel Lopez, William Olivieri, John Fornesi, Ariskelda Inoa, John Tully, Thadeus Czarnecki, Alberto Inastroza, and Scott Peloquin.  Also named as defendants are the Lawrence Police Department, Mayor Michael J. Sullivan, and John Romero, the Lawrence Chief of Police.

morning hours of July 22, 2006, David and Mario, Sr., became involved in a verbal altercation with a group of men at the Social Club bar who had made crude comments to Mindy. When the bartender told them to leave the Club, David and Mario, Sr., complied. Mindy, Mario, Jr., and Lisa were already outside.

Six police cruisers arrived at the scene. Lisa spoke briefly with the officers. Mindy, who was the family's "designated driver," attempted to retrieve the family's vehicle from the parking lot. As David was leaving the Social Club, he encountered Officer Wilcox who said something inaudible. David responded that he had done nothing wrong and was leaving the Club as requested. Without further ado, Wilcox placed David under arrest. David did not resist.

Lisa, who had observed the arrest, approached David as Wilcox was placing him in handcuffs. She assured David that she would post bail immediately. An unidentified officer grabbed Lisa violently by the shoulders and threw her to the ground. Lisa suffered severe bruising on her arms and was left gasping for breath. David took a step in Lisa's direction when he saw her being manhandled. Wilcox threw David to the ground and placed his boot on David's neck, pinning his head to the pavement. As David lay pinned to the ground in handcuffs, Wilcox repeatedly pepper-sprayed him. Wilcox and other unidentified officers began to kick David in the head. An outdoor surveillance camera captured (in part) David being beaten as he was being escorted to a police vehicle. He was kicked from behind and knocked unconscious with a blunt object. David has no memory of being taken to the police station, but he does remember at some point being washed down with a firehose.

It is not clear from the pleadings whether David received immediate medical attention. Ambulance records indicate that David was later found unconscious on the floor of the police garage. David regained consciousness in Holy Family Hospital, where he awoke handcuffed to his bed. He was released the following morning, wearing nothing but his socks, underwear, and a hospital gown. He was charged with two counts of assault and battery on a police officer, trespass, resisting arrest, and disorderly conduct. David spent the next ten months in "physical treatment." After the case had been pending for nearly a year, the arresting officers failed to appear for trial and all charges against David were dismissed.

Lisa, who had observed David being beaten, was ordered by officers to get into her car. When she opened the passenger door, someone said, "Arrest her." Lisa was handcuffed and taken into custody. The officers did not respond to Lisa's queries about why she was being arrested. She was charged with trespass, assault and battery with a dangerous weapon (her car door), two counts of resisting arrest, disorderly conduct, and two counts of assault and battery on a police officer. While handcuffed and in police custody, Lisa was grabbed by the hair by one of the officers, who called her a "dumb bitch." Throughout the booking process, several other officers (or unidentified civilian police employees) repeated the insult, and also made derogatory comments about Lisa's Native American ancestry. As with David, the case against Lisa was dismissed after the officers failed to appear for trial.

The remaining members of the family were not as roughly treated, but Mario, Sr., Tanya, and Mario, Jr., were also arrested. When Mario, Sr., witnessed a group of officers

kicking David, he asked them to stop.  He was told to walk away or be arrested.  Mario, Sr., continued to plead with the officers to stop the beating.  He was then arrested and eventually charged with disorderly conduct, trespassing, and attempting to interfere with an arrest.  Tanya was arrested when after she saw Lisa being taken into custody she exclaimed, "This is a joke."  Although Tanya was told by officers that she was being taken into protective custody, she was later charged with disorderly conduct, trespassing, and attempting to interfere with an arrest.  Mario, Jr., was charged with the same offenses.  All of the charges against Mario, Sr., Tanya, and Mario, Jr., were eventually dismissed.

Plaintiffs have asserted claims for violations of 42 U.S.C. § 1983; Mass. Gen. Laws ch. 258, §§ 2 and 4; and the Massachusetts Civil Rights Act, Mass. Gen. Laws, ch. 12, § 11H.  They additionally assert claims for common-law assault and battery (David and Lisa only), false imprisonment, negligent and intentional infliction of emotional distress, negligence, and loss of consortium (Lisa only).

## DISCUSSION

All of the officers, save Wilcox, have moved to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim.  To survive a motion to dismiss, the factual allegations in a complaint must "possess enough heft" to set forth "a plausible entitlement to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 559 (2007); Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008).  A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Defendants argue that there is nothing in the Amended Complaint to respond to, as plaintiffs do not

connect any specific officer (other than Wilcox) with any alleged misconduct. Plaintiffs, on the other hand, argue that each of the ten moving defendant officers was present during the incident, as indicated by the police report authored by Wilcox. They maintain that given the chaotic nature of the alleged incident, they are entitled to a proceed against all of the officers named in Wilcox's report, at least until they determine which of the officers are responsible.

A plaintiff has a right to "proceed against a 'John Doe' defendant whose identity can only be established through discovery." Wilson v. Town of Mendon, 294 F.3d 1, 7 n.16 (1st Cir. 2002). This right is based on the exact premise at issue in this case: "that a plaintiff in the heat of a confrontation with police may not know or have the opportunity to learn the identity of the alleged wrongdoer." Id. While plaintiffs have not alleged sufficient facts to state a claim against the moving defendants, the facts as pled are sufficient to state a claim against "John Doe" defendants. Therefore, the motion will be <u>ALLOWED</u> and the Amended Complaint will be <u>DISMISSED</u> as to the ten moving defendants, but without prejudice. Plaintiffs are granted leave to file a Second Amended Complaint naming "John Doe" defendants. If and when the identity of a wrongdoing defendant is discovered, plaintiffs will be granted leave to substitute "the true defendant for the fictitious 'John Doe.'" Id.[2]

## CONCLUSION

---

[2]To this end, the court will allow plaintiffs to take depositions of the dismissed officers upon a reasonable showing of relevance.

For the foregoing reasons, the motion to dismiss will be <u>ALLOWED</u>, and the Amended Complaint will be <u>DISMISSED</u> against all officers but Wilcox, without prejudice. The parties shall, within fourteen (14) days, submit a joint proposed discovery schedule.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE